185 So.2d 493 (1966)
TAMIAMI ABSTRACT AND TITLE COMPANY, Appellant,
v.
Daniel J. MALANKA, Mary L.P. Brown, and L.M. Binkley, et Ux., Leo J. Brenan, and L.B. Mayer, Representing Class Defendants, Appellees.
No. 6789.
District Court of Appeal of Florida. Second District.
April 7, 1966.
Rehearing Denied May 11, 1966.
*494 Sidney G. Beaver, Sarasota, for appellant.
Ronald E. Feigin, Sarasota, for appellee Malanka.
Harkavy, Doyle, Hasson & Ludacer, Sarasota, for appellee Brown.
Raymond A. Graham, Sarasota, for appellees class defendants.
LILES, Judge.
This is an appeal from a final decree entered against appellant, plaintiff in the trial court, concerning the marketability of title to certain real property.
Plaintiff, Tamiami Abstract & Title Co., filed a suit for declaratory relief regarding the marketability of title to Lot 2, Harbor Acres Subdivision, located in Sarasota County, Florida. The plaintiff had issued a title insurance policy to defendant Mary L.P. Brown insuring title to said lot. Mary Brown subsequently arranged to sell the property to defendant Daniel J. Malanka. Malanka, however, questioned the marketability of the title and refused to consummate the deal. Mary Brown held plaintiff title company responsible by virtue of its insurance policy, and plaintiff then filed its suit for a declaratory decree asking that the court declare the title marketable and determine plaintiff's obligations under the circumstances. Defendant Malanka moved to make all other lot owners in the Harbor Acres parties to the suit, and they were brought in as class defendants. L.M. Binkley and Beaula K. Binkley, later joined by Leo J. Brenan and L.B. Mayer, were designated to represent all the other lot owners of the class, and they subsequently filed answers in this capacity.
The record indicates that the plat of Harbor Acres Subdivision was recorded in 1946. An agreement between the then property owners and the developers was entered into in 1949 to the effect that Lot 1 or Lot 2 of the subdivision would be dedicated as a dock or landing place for the owners of the lots in the subdivision. This agreement was amended in 1951 to specifically designate Lot 2 as the landing place, the agreement providing:
"Lot 2 of said Harbor Acres Subdivision * * * is hereby dedicated to the use of the owners of lots in Harbor Acres as a dock or landing place, and the same is hereby set aside for the use of the owners of lots in Harbor Acres as a dock or landing place."
These agreements were recorded and appear in the chain of title.
Lot 2 was subsequently conveyed to Harbor Acres Community Association who failed to pay the property taxes thereon. In May of 1963 a tax deed to Lot 2 was issued to one William C. Strode. Strode immediately brought a suit to quiet title against Harbor Acres Community Association and "all persons having or claiming any interest in the property * * * if alive, and if dead, their unknown heirs, devisees, legatees or grantees." The final decree entered in that suit found that the tax deed had duly and regularly issued and that Strode had title to the lot in question.
Strode then conveyed the lot to defendant Brown "subject to easements and restrictions of record." Plaintiff issued its title policy, and Brown executed a conveyance *495 of the lot to the Malankas. The present controversy arose thereafter.
The chancellor ruled that the restriction on Lot 2 regarding its use as a docking area for lot owners in the subdivision survived the issuance of the tax deed to Strode by virtue of the provisions of § 192.33, Fla. Stats., F.S.A., and that the rights of the individual lot holders to such use existed at the time defendant Brown contracted to convey the lot to the Malankas, thus making Brown's title unmarketable. The chancellor found that the Malankas had legal title to the lot subject to the overriding rights of all the lot owners as declared in the restriction quoted above. The defendants had questioned the validity of the tax deed itself, but the chancellor made no finding in that regard stating that he was bound by the previous holding in the quiet title suit. The chancellor did rule, however, that while the quiet title suit perfected Strode's legal title as against Harbor Acres Community Association, the other lot owners were not affected by that ruling as they were not parties to the suit. The chancellor also awarded attorney's fees to the attorney who represented the class defendants in the suit.
Plaintiff has appealed, questioning the chancellor's ruling that the dock restrictions survived the issuance of the tax deed to Strode and the award of attorney's fees. Defendants have cross-assigned as error the chancellor's ruling regarding the validity of the tax deed.
The statute in question, § 192.33, Fla.Stats., F.S.A., reads as follows:
"Whenever a deed in the chain of title shall contain restrictions and covenants running with the land, as hereinafter defined and limited, said restrictions and covenants shall survive and be enforceable after the issuance of a tax deed * * *.
"This section shall apply to the usual restrictions and covenants limiting the use of property * * *.
"Any right that the former owner had to enforce like restrictions and covenants against the immediate, mediate, or remote grantor and other parties owning other property held or sold under the same plat or plan, or in the same or adjacent subdivisions of land, or otherwise, except forfeitures, right of re-entry, or reverter, shall likewise survive to the grantee in said tax deed * * *."
It appears to us that the provisions of the agreements quoted above relating to the use of Lot 2 constitute a restriction on the use of the property which comes within the contemplation of § 192.33. The restriction limits the use of the land in that it provides for the perpetual use of the entire lot as a docking area. It is neither a forfeiture, right of re-entry nor a reverter, and thus survives the issuance of the tax deed to Strode. This made defendant Brown's title unmarketable, and she was in no position to convey marketable title as such to the Malankas. The chancellor's ruling in this regard is therefore affirmed.
Regarding the question of attorney's fees, we believe the chancellor erred in awarding a fee to class defendants' attorney. It is an established rule in this state that attorney's fees may not be allowed unless provided for by statute or agreement of the parties. In Re Field's Estate, 121 So.2d 46 (D.C.A.Fla. 1960). Although the statute governing declaratory judgments and decrees provides that the court may make "* * * such award of costs as in its sound judicial discretion may seem equitable and just," § 87.09, Fla.Stats., F.S.A., this cannot be expanded to include attorney's fees. We find neither statutory authority nor authority by way of agreement for the award, and that portion of the chancellor's decree is therefore reversed.
Our decision that the restriction was of such a nature as to survive the issuance of a tax deed makes it unnecessary for us to pass on defendants' contention that the chancellor erred in declaring himself bound by the prior quiet title action decree holding *496 the tax deed to Strode was properly issued. It is apparently conceded by all parties that the class defendants herein were not parties to that action, and therefore their rights could not have been affected by the quiet title decree. We note in passing, however, that none of the class defendants appear to have had a sufficient interest in the issuance of the tax deed itself to have had standing to attack its validity. We also have serious doubts as to the propriety of their seemingly collateral attack on the deed's validity in this suit.
Affirmed in part and reversed in part.
ALLEN, C.J., and HOBSON, J., concur.