GRIMES, Acting Chief Judge.
This appeal represents another chapter in the continuing dispute over the validity of water and sewer franchises granted by Lee County before that county relinquished jurisdiction of its water and sewer regulation to the Public Service Commission.
Prior to 1970 Lee County had granted a number of water and sewer franchises to various utility companies. The county had entered into franchise agreements similar in form with the several utilities providing for a payment to the county of a franchise fee consisting of a percentage of gross revenues. These agreements authorized the utilities to use the county rights of way but did not obligate the county to perform any specific services for the utilities. On February 18, 1970, the Lee County Commission passed a resolution relinquishing to the Public Service Commission the authority to regulate water and sewer utilities pursuant to the provisions of chapter 367, Laws of Florida.
After the enactment of the 1970 resolution, GAC Utilities, Inc. of Florida, one of the franchisees, then sued for relief from making further payments under its franchise agreement. The Lee County circuit court refused to void the agreement but reduced the franchise fee from 6% to 4½% because the Public Service Commission was charging a regulatory assessment of 1⅛% *1113 of the gross revenues of the utilities under its jurisdiction. This court affirmed that judgment without opinion. GAC Utilities, Inc. v. City of Cape Coral, 303 So.2d 716 (Fla. 2d DCA 1974).
The next event bearing on the controversy occurred when Lehigh Utilities, Inc., another Lee County franchise holder, obtained a summary judgment declaring that the county’s 1970 resolution relinquishing authority to the Public Service Commission had the effect of nullifying its preexisting franchise agreement. On appeal this court reversed, holding that there were issues of fact with respect to whether the county had continued to provide benefits and other assistance to the utility under the franchise for which the county was entitled to be paid. County of Lee v. Lehigh Utilities, Inc., 307 So.2d 496 (Fla. 2d DCA 1975). Upon remand, Lehigh voluntarily dismissed its complaint.
Lee County then sued Lehigh for nonpayment of the franchise fee and joined the Public Service Commission as a defendant. The Public Service Commission obtained a change of venue to Leon County. After a trial, the Leon County circuit court held that Lee County’s 1970 resolution stripped the county of its authority to continue enforcing the revenue producing provisions of the preexisting franchise agreement. The court concluded that Lehigh was no longer required to make payments to the county because the county was not providing any special services to Lehigh not provided to citizens generally. This judgment was affirmed by the First District Court of Appeal without opinion. Lee County v. Lehigh Utilities, Inc., 377 So.2d 174 (Fla. 1st DCA 1979).
Following the affirmance of the Lehigh Utilities judgment, the Public Service Commission ordered Florida Cities Water Company to place the 4V2% of gross revenues, otherwise payable to Lee County under its water and sewer franchise, into an escrow account pending determination of the controversy. Thereafter, the commission issued a proposed order directing Florida Cities to discontinue collecting franchise fees and to refund the escrowed revenues to the utility’s customers. Florida Cities then filed a complaint in Lee County for declaratory judgment seeking a determination as to whom the escrowed franchise fees should be paid. The court declared that the 1970 Lee County resolution had the effect of amending rather than voiding the franchise agreement and that the agreement remained in full force and effect with respect to all powers and duties not specifically granted to the Public Service Commission under chapter 367. The court held that a fair return for the benefits and other assistance rendered by the county was 3½% of the gross revenues and directed that the remaining 1% could be refunded to the customers as ordered by the Public Service Commission.
On appeal the commission argues that the enactment of the 1970 Lee County resolution relinquishing the regulation of water and sewer utilities in the county had the effect of superseding the preexisting franchise agreement between the county and Florida Cities. We agree. The resolution was broadly worded and did not refer to individual franchises. Chapter 367 provides that when utility regulation is relinquished by the county, the commission obtains exclusive jurisdiction over each utility with respect to its authority, service, and rates. Pursuant to section 367.171, Florida Statutes (1981), Florida Cities, upon application, became automatically entitled to a certificate from the commission authorizing it to operate in the same franchise territory. When the county transferred its authority over Florida Cities to the commission, there was nothing left upon which the franchise agreement could operate. We cannot accept the proposition that the commission’s authority to regulate rates is not affected by the requirement to pay the franchise fee.
In each of the lawsuits the continuing concern was whether, after the enactment of the 1970 resolution, the county was still providing services to the utilities for which it should be paid. In the instant case, the court below heard testimony that Lee *1114 County provided such services as a well plugging program, a chlorine response team, laboratory access, and a disaster preparedness response. Yet, the county witnesses admitted that these services were generally available to all water and sewer utilities regardless of whether they had a franchise agreement with the county. Hence, it cannot be said that these were services provided to Florida Cities under the franchise agreement. This does not mean, however, that the county cannot charge Florida Cities or any other utility appropriate fees for its services.
Lee County also argues that by maintaining its facilities on the public rights of way Florida Cities continues to obtain benefits under the franchise agreement. There was no evidence with respect to whether water and sewer utilities certificated by the Public Service Commission in Lee County which did not have franchise agreements were required to pay the county for the use of its rights of way. In a lower court memorandum, Lee County conceded that under section 338.17, Florida Statutes (1981), it could not deny a utility the nonexclusive use of county rights of way regardless of the existence of a franchise agreement. The Public Service Commission points to an Attorney General’s Opinion stating that noncharter counties (such as Lee County) are not authorized to impose an annual charge in the nature of a rental for the use of county rights of way by public utilities. 1976 Op. Att’y Gen. Fla. 076-14 (January 23, 1976). In any event, when the county passed the 1970 resolution, it lost its ability to provide or continue the license to do business without competition, which was the essence of the franchise agreement. By itself, the right-of-way provision was not sufficient to keep the franchise agreement alive after jurisdiction over the utility was transferred to the Public Service Commission. We do not, however, pass on whether Lee County is entitled to charge Florida Cities for the use of the rights of way independent of the franchise agreement.
We need not discuss the county’s argument that by granting a franchise to Florida Cities it gave up the opportunity of accumulating large quantities of contributed assets through the operation of its own water and sewer utility. The judgment below was not predicated upon this contention, and we find no legal merit in it. By transferring its authority to the commission, the county gave up any right to assert a claim upon the theory of forebearance.
Candor dictates that we acknowledge that our court has contributed to the confusion over the continuing viability of Lee County water and sewer franchises. In the GAC case, the suggestion that the 1970 resolution voided the franchise agreement came from a party who was seeking to be relieved of its prior commitment to pay 6% of its gross revenues, and the Public Service Commission was not a party to the suit. When it was in this court, the Lehigh Utilities case was in the same posture. Our decision in that case was only to reverse a summary judgment because of factual issues relating to whether the county was still providing the utility with any services for which it was entitled to be paid. Nevertheless, our opinion clearly implied that any payment for services which the utility might be required to make would be under the franchise agreement. Therefore, we recede from that opinion to the extent that it suggests that the franchise agreement had continuing viability subsequent to the enactment of the county’s 1970 resolution relinquishing jurisdiction to the commission.
There remains for our determination the question of whether the court properly authorized the payment of attorney’s fees to Florida Cities out of the es-crowed monies. While suggesting that it may permit the payment of legal fees to Florida Cities in the course of approving a refund procedure for the escrowed funds, the commission asserts that the court had no authority to award attorney’s fees in a declaratory judgment action. See Tamiami Abstract & Title Co. v. Malanka, 185 So.2d 493 (Fla. 2d DCA 1966). We find, *1115 however, Florida Cities’ suit was in the nature of an interpleader, for which the payment of attorney’s fees are authorized. Bache Halsey Stuart Shields, Inc. v. Witous, 411 So.2d 1324 (Fla. 2d DCA 1982). The fact that the suit was not denominated as an interpleader should not preclude Florida Cities from obtaining an award of attorney’s fees. Its posture in the litigation was one of a stakeholder which was forced to act because of the conflicting legal positions advanced by Lee County and the Public Service Commission.
We reverse that portion of the judgment directing payment of the escrowed monies to the county and the further payment of the franchise fee. We affirm the award of attorney’s fees to Florida Cities. After the deduction of reasonable attorney’s fees as determined by the court, the escrowed monies may be refunded to the customers pursuant to an order of the Public Service Commission.
RYDER and DANAHY, JJ., concur.